We'll start with Costanza v. Barnhart. Good morning. Good morning. If it pleases the Court, Mark Lipton for the appellant, Catherine Costanza. Having gone through many social security hearings where we have the experts testify by phone, I'm used to talking to the air and then hearing a response back. So, Judge Gibson, thank you for being here with us and taking the time to listen to my case. I'd like to reserve two minutes for rebuttal, Your Honor. This is a social security disability appeal. I'm sure the Court's very familiar with the facts and have reviewed it all. We have indeed. I would like to just point out on a policy basis, the issue here, of course, is a remand versus a reversal. When we have remands, we double everybody's time. We double the time of the administrative law judges, the appeals counsel, and the claimants. And while abuse of discretion under Harmon is the standard you're to use today, I certainly believe that the policy of having to have cases done twice when they don't have to be done twice, the inconvenience not only of the administration, but certainly the burden it puts on the claimants, should be considered. The standard of review, as Harmon enunciates, is that the case should be reversed rather than remanded. If the ALJ has failed to provide legally sufficient reasons for rejecting the evidence, there are no outstanding issues to be resolved. And it's clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. I think that in this case, Ms. Costanza meets all those criteria. She illustrated that there were legal errors committed by the ALJ. The administrative law judge failed to credit her credibility properly. And the witness she presented, the district court agreed with that. The ALJ did not apply the proper rules to the treating physicians. The district court agreed with that as well. Were those things done properly? Were her testimony and the opinions of the treating physicians credited like they should have been? We have a lady who's limited to working maybe a couple of days a week. She testified that she has four bad days a week because of fibromyalgia, where she rests most of the day. We have a medical examiner who testified that he didn't know whether she had fibromyalgia or not. But if she did, her symptomology that she complained of would be consistent with the illness. The most compelling in this case, Your Honors, is not only the opinion of Dr. Lovitz, the treating physician, but the treatment he gave her since April of 1992. And his records are in the transcript. Trigger point injections of cortisone every other month, year after year after year. This isn't a case where he sent her just the biofeedback or prescribed Elevil, which is typical treatment for fibromyalgia, and told her to do a little bit of aerobic exercise. This is a situation where he's doing probably the most invasive treatment you can do for fibromyalgia. So he took it quite seriously. And she went to him year after year after year. The issues that the commissioner raises as unresolved issues are the onset date and the need for possible vocational testimony. As to the onset date, the record does not have to be unequivocal. In fact, I believe it's Social Security ruling 8320 even indicates that precise evidence need not be available. Inferences are even permissible. Well, in this case, we have a lady that started with surgery in June of 1991 for her neck, went on to bilateral carpal tunnel surgery for her hands. And then only after those did not resolve over symptomology did the fibromyalgia diagnosis attach, and treatment began for that. Again, Social Security ruling 83-20 indicates that to determine the onset, you start with the applicant's allegations. And the ruling actually says this is found on a disability. September 30th, 96 is the key date here? September 30th, 96 is a date lasting surgery on this. Right. So back in June 1991 was the last date she actually worked. And again, the Social Security ruling indicates that as far as the applicant's allegations, you start with the application and the alleged onset date and application is June 1991. Then you look at work history and you do that by looking at the earnings report, which is also in the record, which ends in that third quarter of 1991. Then you look at the medical and other evidence. Well, since June 1991, this applicant, this claimant has had one procedure after another trying to treat chronic symptomology. And she has had the treatment not only of surgeries, and they post her date last insured, she had multiple gastrointestinal surgeries, bowel resections. And she started with those actually prior to her date last insured. But the fibromyalgia, which was first picked up and diagnosed in 1992, was treated since April of 92 with trigger point injections. Her testimony is credited with the opinions of Dr. Levitz and Dr. Restifov and Dr. Kaufman that if she had fibromyalgia, these would be the symptoms which she complained of, which are significant fatigue, joint pain, needing to rest multiple days a week are credited. There are no outstanding issues. Did Kaufman think that she didn't have fibromyalgia? He said he didn't know. My cross-examination of him ended with, been sitting here today, Dr. Kaufman, you don't have an opinion one way or the other whether this lady has fibromyalgia. He said, right. So he said, but if she had it, her symptoms would be appropriate. He says, that's what they say. Dr. Kaufman is not very partial to the diagnosis of fibromyalgia. Of the vapors, right? The vapors. I've been with him on several hearings and I understand it and I understand this court's dilemma with fibromyalgia, chronic fatigue, reflex sympathetic dystrophy, when we don't have a lot of objective evidence. But again, you look at the whole record for this lady, this is not somebody who just waltzes into a doctor one day. So I think the record speaks for itself. I do not believe the vocational testimony is necessary because the rulings make it clear she can't do sedentary work at all. That's the lowest level because that requires five days a week, eight hours a day. Is there an issue from what time she is entitled to compensation? I don't believe the onset date is an issue. She stopped working June 1991. That's when she had her first neck surgery. That's what she put on her application and the earnings records indicate she never worked past that date. And Dr. Levitz, who was her primary treatment physician, indicates since that date, neck surgery, she's been disabled. She's totally disabled. She can't sustain activity. She's in chronic pain. And I think that that is the date. Just to clarify though, I understood that the key has to be before the 96 dates. Exactly right. Now, does it also have to be precise as to actual onset or is it enough if it just occurred before 96? For her to be eligible, if it occurred before 1996, she's covered and she gets benefits. The question is how much retroactive benefits are we going to get? So that has to be determined. It's important for you to take it back to 91 to get the full benefits during the pre-96 period. Well, it is and it isn't because her application date, I don't believe, that's probably the only fact I don't have is her application date, but they're only going to pay her one behind her application and she didn't file in 92. So if you found it... When did she file? We don't know. I don't know, Your Honor. You can, why don't you save your time for rebuttal and you can tell us that. Good morning, Your Honors. My name is Sarah Ryan and I represent the Social Security Administration. I'm Assistant Regional Counsel here in the San Francisco office. And I would like to add on a personal note that it is a very great privilege and honor to be here appearing before this Court today. Mr. Lipton started out by telling the Court that this is a policy issue and reminding the Court that it was a remand versus reversal issue. And I would like to redirect the Court's attention to the policy involved here. The basic standard of review that this Court has before it is, did the district court abuse its discretion? This Court is not engaging in a de novo review of the evidence. This Court simply takes what the district court found and determines whether it's an in other cases that the Court is familiar with. The policy... That's different from the usual situation where we're reviewing de novo because this is a remand versus a determination. Yes, sir. It's because the question that the appeal brought by the claimant was not attacking the determination of the district court to remand the case. That would have been a de novo review. The appeal was brought attacking the remedy fashioned in that remand, whether it should have been to order the commissioner to make immediate payment of benefits versus conduct additional proceedings in order to cure defects that we ourselves admitted had occurred at the administrative hearing level. That is the policy that I ask the Court to keep in mind, the very doctrine of separation of power. We understand, I think, the role here. I think the abuse of discretion issue, at least as I understand it, would be that, and as at least being argued by the claimant here, is that if you accept and properly credit the testimony and evidence that was improperly addressed by the ALJ, is there anything left as a matter of law? And what's left? If, in fact, you credit the testimony that she can't work four days out of a week, what's left to argue about here factually? I believe appellant is asking this Court to credit as true evidence that the district court chose not to credit as true. But under our law, don't we credit as a matter of law the unrefuted or the improperly rejected testimony? No, sir. Most of the cases in which treating physician opinions have been rejected by the ALJ or which the claimant's credibility has been rejected by the ALJ are indeed remanded for further proceedings rather than remanded for immediate payment of benefits. In fact, Judge Reinhardt himself has made such rulings, the bulk of the cases, dealing with the credits. Why Judge Reinhardt himself? Well, because, shall we call him the father of the rule? Judge Reinhardt in Nguyen remanded for further proceedings in a credit as true case rather than for immediate payment of benefits. And the reason is, of course, as the case law develops, it's not just a question of do we accept as true the physician's evidence or the claimant's evidence, but also we look at what that evidence is and ask, does that compel a conclusion of disability? Why doesn't that here? Well, we have some countervailing facts. Contrary to claimant's claim, it's not clear from the record that she quit working in June of 91 because she testified that she kept working until about June of 92, that she was working even after she had her carpal tunnel surgery. What difference would that make, whether it's 91 or 92? The onset date is important, and yes, it is important to fix an exact month of onset from the standpoint of if she is determined to be eligible for benefits, then the question  is, so it's relevant not just to... She can't be paid for more than one year back from the time she filed. I believe it's one year, Your Honor. I'm sorry. That's just fled my mind. That's what the posting counsel said. If, for example, she filed in 1994, what's the difference whether she quit working in Well, that issue goes to credibility, and that issue goes to severity of symptoms. If she is alleging one thing but she testifies to another, for example, she kept bowling until 1993, and that's hardly consistent with disability and inability to work from 1991. These are factual questions which should properly be resolved by the adjudicator, which in this case is the administrative law judge. That's why I believe the district court ordered a remand for further proceedings, because there are a number of questions about the onset date. Are there any questions that she's disabled now? I can't tell you as of today, but I can tell you that at the time the ALJ wrote his decision, she determined that the ALJ determined that Clement finally became disabled. The question was, did it occur before or after the date last insured? That's the question that has to be resolved on further proceedings. Judge Gibson, any questions? No questions. Thank you. I do have one more. I'm having a hard time with this, and maybe it's because we don't know the dates on which she became disabled. The ALJ said, yes, she's disabled now, and we're looking back from 1996, one year or two years. It seems to me that makes a big difference, because it seems pretty obvious she's disabled now, and she's not going to get better from all of this. Well, the ALJ said that in 1998, and the critical date is September of 1996 when her insurance ran out. You haven't said anything about anything in 1996. You talk about bowling up until 1993. What is there to suggest she wasn't disabled before 1996? Actually, there is almost a dearth of any kind of events striking this poor lady between 1994 and 1996, and then 1996 becomes important because that's when she had her partial colon surgery. The ALJ determined that she had a temporary period of disability following that in order to have reasonable recuperation, but it was not until a year and a half after that that it became apparent that she was really going to have to have considerable procedures done. All right. Thank you. Thank you very much, Your Honor. I'll make this brief because I have to. We do meet the harm and abuse of discretion standard, Your Honor. I cited that when I first began speaking. According to the commissioner, this court can never order remand, excuse me, order reversal if a district court has ordered a remand, and that's not the case. You do have authority to reverse a case. The application actually was filed on February 18, 1997, so as far as her back benefits go, if the court wanted to take a June 1992 onset, it wouldn't really affect the issue very much. Well, what's that date again? February 18, 1997. Your Honor, the statement about her testimony and her credibility is very frustrating because, first of all, the district court found that she was credible, contrary to what the commissioner is arguing. But what the sequence of events are is we had our hearing in 1998, and by that time, the court is well aware what this lady had gone through in 1998. And whether she was confused when she said June of 1992 rather than 1991, or she meant that she wanted her employer to consider her off the rolls really is, if you look at the entire record, her surgeries began in 1991. She had no earnings past 1991, and her application says June 1991. So she gets at the hearing and she says June 1992. To say this creates a big credibility issue is very, very silly. I correct, then, that the back benefits would only be due from providing a response if she's disabled would only be from February 18 of 1996. That's correct, Your Honor. So that's the key issue, is it not? Whether she was disabled, of course, before the September date in 1996, but for past benefits, it would be February 18 of 1996. That's correct. And the only other point I want to raise is in response to the allegation that there wasn't much going on as far as, you know, pain or problems up until, you know, this 1996 and the colon resections. This is the way the administrative law judge handled it. He disregarded the fibromyalgia and he focused on the bowel resections and those items. And I'm here saying her fibromyalgia was so severe that in April of 1992, after this next surgery didn't relieve her problems, after the bilateral carpal tunnel surgery didn't relieve her problems, her treating physician, Dr. Levitz, began trigger point injections every other month since April of 1992, which also belies the June of 92 stopping work date. It was June of 91 she stopped work. Her earnings record, her application, Dr. Levitz's report, all support June 1991. The court found June 1992. I wouldn't have an issue with it. It's inconsequential. But she's been very consistent and she had significant treatment starting in 1992 on her fibromyalgia. And that's what this issue is in this case. Do we credit her fibromyalgia or not? And I can't see how we can disregard it given the opinions of the treating physicians, the lack of any clear and convincing evidence against them. This is required in light Lester, Reddit, and this whole plethora of cases that we've had. So if I understand correctly, it did seem to me that the ALJ was facing it largely in the fact that he disbelieved that fibromyalgia was a condition. And I guess that's what Dr. Kaufman was saying was the vapors. He doesn't know what it is. He can't put his arms around it. He's not comfortable with it. But if she has it, those symptoms are what they say that people have. Okay. Thank you, Your Honor. Thank you. Case that's argued will be submitted. Thank counsel for their argument. Next case is Bankston v. White. Counsel, you may proceed. Thank you, Your Honors. Good morning. May it please the Court, Justice Gibson in absentia but here via phone. My name is Jeffrey Dickerson. I'm from Reno, Nevada. I represent the appellant in this case, Mr. Bankston, who is a federal employee who was dismissed from federal service after which he filed an appeal with the MSPB. He also alleged that age discrimination was involved with his termination and therefore became a mixed case with the MSPB. Prior to the administrative hearing with the ALJ, he withdrew his or requested withdrawal of his MSPB, doing that directly to the ALJ, who in turn granted that request, allowed the withdrawal, and canceled the hearing. Whereupon, Mr. Bankston proceeded to file in a timely fashion, in other words, within 90 days, in federal district court in Reno, Nevada. What ensued was a motion to dismiss initially on that case, which we'll call Bankston 1, in which they moved to dismiss based upon failure to exhaust grounds. That culminated in a colloquy between counsel and the court, whereupon Judge McKibben ordered to have 90 days in which to attempt to reopen that matter and then come back to him, advise him if we have been able to reopen it. If we couldn't reopen it, then he'd address the issue that was presented at that point in time. We attempted to reopen it. The MSPB would not allow us to reopen it, so we did come back to Judge McKibben, and the issue was again presented. The procedural posture within which it was presented happened to be a renewed action because he dismissed the previous action without prejudice to bring a second action, and there was no issue regarding limitations periods due to that order. The district court considered the new briefing, did not have, I don't believe, subsequent arguments. I'm sure that the district court considered the transcript because it ordered the transcript on the previous hearing, and then made a decision. And the decision was not based upon nor did it address the question that was left open in Stevens versus the Department of Treasury, and that question is whether or not under the ADEA a federal employee is required to exhaust his administrative remedies. Our position in this appeal and down below was that, as Justice Stevens in his concurring opinion indicated, that there was no exhaustion requirement in the ADEA, and therefore, a argument to apply as a credential consideration by the courts, grafting something into the legislation that wasn't there. Administratively, you may have regulations under these cases that address this issue, and under the regulation that was addressed below by Judge McKibben, which is 29 CFR 1614, that's a regulation. And Judge McKibben solely addressed the regulation. He did not address whether or not the ADEA, the statute that Congress created this remedy under, addressed whether or not a final agency decision was necessary in order to proceed to federal court. And as indicated in Justice Stevens' concurring opinion in Stevens versus the Department of Treasury, what, as he saw it, what the courts that have gone this way, the Third Circuit, the First Circuit in Castro, I believe the Third Circuit in Petrel, these other cases that have been cited in the briefs and in the decision below, have grafted upon this statutory scheme an analogy, or by analogy, a requirement similar to that in Title VII where there is none that exists. And the only circuit that's out there that really has candidly addressed this issue, I think, is the Sixth Circuit in Lankford. And they looked at it and they said, there is nothing there to require a final agency decision under the ADEA. Does it make a difference if the action is still pending at the time that the civil action is brought? That issue isn't here, thank goodness. Because in the back decision, which they argue is not applicable anymore, but there is a part in that back decision, the very last paragraph, they say that the primary purpose of the exhaustion requirement is to prevent simultaneous proceedings. And I would imagine that if that issue were presented to you, you would have some serious prudential concerns because you're double-tracking it. And in that instance, it's not here, though. Fortunately for this Court, it doesn't have to address that issue. That would raise some serious concerns prudentially. In this case... Under... There was, as I recall, there was in the earlier pre... I forget the date it was amended. But it was amended so that if the petitioner filed or the claimant filed a civil action, that automatically terminated the pending proceeding? Right. And in this particular case... For instance, in the Viniatris case, which is a Ninth Circuit case where they applied the abandonment doctrine. And that case doesn't apply here. I mean, in that case, you've got that guy going every which way but loose, Your Honor. And he files an MSPB, then he files an EDSC, and he does several other things before he finally gets to federal court. But in that case, what happened was he filed the MSPB and then filed with the EDSC. And you can't have both. So that's another situation where you would have some serious prudential considerations at play where you've got a complaining party, a charging party attempting to dual track things to get two bites at the apple, essentially. We didn't get two bites at the apple here. We decided when I got involved with the case, and I don't know if this is in the record, but just so you know, I became involved and I did not want to go to that hearing. I did not want this adjudicated by the administrative law judge. And I advised the client that we could get out of this. I reviewed the case law with respect to this. And I knew this issue was going to come up. I was almost certain it was going to come up. And here we are today addressing it. We're not addressing it because I'm concerned about my potential problem in advising the client to drop that. We're addressing this because it's an important issue. And the question, I think, really comes down to, can this court, as the court below did, look at a regulation that the EDSC has promulgated that says, here are the three avenues you have to go. And you can't go to federal court until 180 days expires in the EEOC process or 120 days expires with the MSPB process. And then you can treat that as a final agency decision. And only then can you go to federal court where the Congress has not imposed any such limitation. Where Congress has imposed such a limitation, the courts have been correct in coming down and applying as a prudential consideration the requirement that if you undertake to stop, but in this situation, you don't have that. And therefore, by imposing that prudential consideration in this case, under these facts, this court is grafting a prudential requirement or limitation where Congress has not even spoke or spoke in. And I think that would be inappropriate for this court to undertake that type of judicial legislating where Congress has been silent. And we know that where Congress has wanted to speak about the issue, it has done so. It has done so very clearly under 2016, Title VII, requiring exhaustion, requiring a final agency decision to be made before you proceed to federal court. It has not done so in the ADEA, and certainly not with respect to federal employees. MR. BOUTROUS. You say that Judge McKibben relied on regulation. What does the regulation say about that? MR. BOUTROUS. It's somewhat detailed, but it says that you can, as a federal employee – MR. KAMINSKI. On this particular issue, we don't have to get involved. MR. BOUTROUS. Oh, okay. On this particular issue? MR. KAMINSKI. Yes. MR. BOUTROUS. Well, Judge McKibben canvassed it in a long paragraph as to what the different options were. What he did here, which is basically took the third option, went to the MSPB, and under the MSPB category, you've got 120 days to deal with the issue, after which you can treat it as a final agency decision. Here, on the 62nd day, we withdrew, okay? So we didn't exhaust the 120. But I think it's curious, if you look at, I believe, footnote 11 – I saw this this morning and thought it was curious – that in the Vinietro's case at footnote 11, they discussed the 120-day MSPB requirement, because remember, in that case, he had gone to the MSPB. And in the footnote, the Court notes that the 120-day limitation is a fire under the agency's rear, if you will, and not any kind of effect upon a final agency decision. As I understand that footnote, what they're saying is, unlike the 180-day requirement the EEOC has imposed, after which you can treat it as a final agency decision, the Vinietro's case is saying that's not what that is. 120 days does not make a final agency decision, okay? So that's another distinction, and I'm not – I haven't thought through how to – if it's even necessary to try to figure that out, because again, Congress has not required a final agency decision. Whether or not the 120 is a final agency decision or not is beside the point in this case. We did undertake, in a timely fashion, to trigger the procedures that were in place as Congress has required. We timely filed the action after concluding the administrative proceeding. And to say that we abandoned that proceeding and therefore didn't exhaust leaves this person without a remedy, and that's unfair, and it's not what Congress intended. Thank you, Your Honors. Okay. Greg Gibson, any questions? No questions. All right. Good morning, Your Honors. Good morning. My name is Greg Addington. I'm an assistant United States attorney for the District of Nevada in Reno. It would be very tempting to read the Supreme Court decision in Stevens and this court's decision in Beck and conclude that an age discrimination complainant need not proceed through any previously initiated administrative process before filing suit in district court. I would submit that that is superficially appealing, but it would be erroneous. There are two separate parallel statutory and regulatory schemes available for an age discrimination complainant. One is under Title 29 and implementing regulations in 29 CFR, specifically 29 CFR 1614.201 and following. And on the other hand, there's another track under Title 5. The Title 29 process is described as the EEO process. Another process is the MSPB process under Title 5, specifically Section 7702 and its implementing regulations found at 5 CFR, specifically 1201.151 and following. The district court properly recognized that this is that Mr. Bankston initiated a mixed case under Title 5, Section 7702 and its implementing regulations. Neither Stevens nor Beck have anything to do with this case because the complainants in those two cases initiated EEO processes by filing an EEO complaint with their respective agencies. Those are not mixed case cases. Those are not MSPB cases. They are separate and distinct regulations with separate and distinct requirements. And this court in Beck made it very clear in footnote 1 at page 244 of that decision that it had nothing to do with anything other than EEO regulations, namely the Title 29 regulations. In footnote 1, it states, quote, we emphasize that our holding is limited to age discrimination claims governed by EEOC regulations. And then there's a case citation following. This case, Bankston case, is not governed by the EEOC regulations. That recognized just as the Seventh Circuit in Adler had previously recognized that the EEOC regulations included a provision which Your Honor Judge Hudd mentioned, namely 29 processing of the appeal. And I say commission processing of the appeal because that's what that regulation says. It only affects what the EEOC does because it would only be an EEOC matter that was pending in connection with those regulations. So the EEOC regimen is that, and that Beck was dealing with, now provides that if, let's see, so the result of Regulation 1613.513 in effect at the time Beck filed this complaint is to terminate any unexhausted administrative proceeding when a claimant files a civil suit. Similarly, an exhaustion requirement would terminate any civil suit filed. Thus, the joint effect of the amended regulations and exhaustion would be to leave the claimant without any avenue of relief. That's correct. Okay, so in the EEOC process, if the claimant terminates or filed, rather if the claimant files a parallel civil action, doesn't that terminate by the claimant's act? Yes. Okay, so in this case, the claimant effectively did just that. The claimant withdrew his claim before the MSPB. He did. Now, where is it writ that the claimant having started down the MSPB road must finish it to conclusion when the MSPB in fact granted his request to dismiss? Yes, well, first of all, we must note that under the Title V regime and the V CFR regime, pertinent to mixed cases, there is no counterpart to the regulation in the EEOC. But there's also no exhaustion requirement as a counterpart to Title VII, is there? Yes, indeed, there is. Under Title V, 7702. Title VII has a statutory exhaustion requirement, doesn't it? Title VII has the statutory exhaustion requirement built into it. Yes, sir. Is there one for MSPB, Title V? Yes, Title V. Congress specified exhaustion of remedies. Yes, Your Honor. Okay. And I would note, Title V, 7702 begins with one of my very favorite introductory phrases, notwithstanding any other provision of law, and then it goes on to state that a mixed case complainant who files a petition with the MSPB is before that board and the board, quote, must decide that appeal within 120 days or must decide the case. What does that say about exhaustion of remedies, though? Does that parallel the language in Title VII? Well, that's what you're reading into, and that's what Judge McKibben understood it to be saying. But that doesn't say anything about the petitioner having brought it must exhaust that. It just says that's a timeframe in which MSPB must act. Yes. Sort of like the California Supreme Court has to get its decisions out 60 days in submission, or they don't get paid. But that doesn't mean that's what you're reading into it, though, that that's a congressional exhaustion requirement. That that is the congressional exhaustion requirement. That's correct. The board must decide the appeal that is presented to the board. And if they don't do it within 120 days, what? Then the implementing regulations under the 5 CFR state that if the board does not decide within 120 days, the mixed case complainant may proceed to district court. Well, that's what it says. That's a statute of limitations or decisional limitations on MSPB, isn't it? How does that say anything about that the petitioner must, having brought it, bring it, allow the MSPB to make the decision? Because the board is directed to decide the case that's before it. Within a time limit. Within a time limit. Right. And if the board does not decide, then the complainant has the choice to proceed to district court. And that is precisely the analysis which this court followed in Vineratos, which, of course, was not an age discrimination case, but was a case that evaluated the MSPB regulations under 5 CFR. Again, a post-Stevens case. And the Vineratos case cited with approval other circuit decisions that were age discrimination cases that were also mixed case cases. The Third Circuit in Pertil and the Seventh Circuit in McGinty, again, pre-Stevens cases, which may be implicated by the Stevens decision. But following Stevens, the Second Circuit in Ikanamu, I'm hoping I'm pronouncing that right, had before it a mixed case under the Age Discrimination Employment Act. So it's precisely this type of case and held that the complainant there was not subject to the MSPB. And then that withdrew that at footnote 8, that because, quote, because the complainant was not subject to the MSPB. In Vineratos, before pursuing the regulations, the Eighth Circuit in McAdams, and page 1142 of the McAdams circuit, chosen that fire to exhaust her claim and continue McAdams, abandoned her. She had both an ADA information claim as well as a case. So the analysis  of the regulation EFR regime terminated a process when suit is filed. When you begin that to its exhaustion, but you know, our argument, I just want to make sure I do that. Provision of law and in paragraph and then end of the action in accordance with the boards. It's under 70. So on this, and then it says, what, under paragraph one, should we did this. The decision that allows the complainant to go to solve a decision made. And so it is that for that period of time an MFPB decision to review received the district court. Thank you. Okay, I'll give you one. I'm gonna try to decisions as we withdrew our claim on the 62nd day, we didn't get to the one 20 as a decision and where there was a hearing, but there was a this of an MSP on this case, don't you wish to go back to the AD and say, to get any decision, whether it's your honor, I think. Okay, thank you. Because this argument, thank you counsel for Oh,  This is caser is Biggs for you you you you you you Whatever questions, but I'll start off by saying you This quarter that board violated Jeffrey Biggs Dupont has a school suitability Rational that are supported by sufficient evidence and see that We are bad to some evidence some reliable evidence standard Address will deliver the interest which Suggests, but in that and we get to the some evidence why it's a support On is You Perform a process letting the governor's policy that repeatedly You read this is at the excerpts of record page Conclusion is title, but the deep You mr.. Lettie's declaration the board of prison terms commissioner work for you Experience at the board and what he observed the board Well set out there, there's any about You We said And no way did they prove that I was on reasonable risk to the public safety did it page seven It's the beat board is going out of its way to make a decision making To make its decision-making method They the board have to prove that he would be Dangerous I've heard that it does the statutory language is that you will be that you are suitable unless you pose an unreasonable risk of danger and the Language in there is that you've got an expectation of parole and that it's on the board's Burden to find and it's a it's a it's a low threshold It's still an agency decision is just some reliable evidence To show that you pose an unreasonable the risk of danger to the public if you're released So I don't think the board can come into the hearing The parole board Proves certain things and then the parole board Find sufficient evidence proves that you pose an unreasonable risk of danger to the public. That's what California law requires That's what the regulations that implement it say they set out a suitability determination characteristics that they're looking at so they give them some framework that they work through and I think that the the structure is set up that They're entitled to parole unless The board finds evidence of unsuitability because they're a public danger It's an unreasonable risk of danger to the public and what? What point the first year after He sentenced No, I'm they've got a whole separate structure within the regulations in the statute of when one has an initial suitability hearing I believe when mr. Biggs was Convicted that it was two-thirds of the minimum term of 25 years plus whatever given whatever custody credits I think in his case it was about the 20 bucks a life and this was 15 years along the way wasn't I think it was 15 years along the way and then you also have to keep in mind that the If one is found suitable as McQuillian case is a prime example he was found suitable for all in 79, I think from a early 70s conviction So it's an even shorter time frame between when the conviction when he got the CDC when he was found suitable, but his release date With decades later. So the separate question of applying the matrix and assessing when he should be released is a separate problem So the concern that you might be go to prison for a life term be found suitable a year later and released three weeks Later is nowhere in the cards in this case. It's not something you have to be concerned with The problem what he's asking for is a fixed date He's asking for at this point. He's not even asking for the fixed date in reality I mean the limitation of our the petition is that he's asking for a fair hearing by a fair board The fair hearing portion was discussed by the Let me be sure now because we've moved from you know, originally the argument was An attack on some evidence now. I asked you. Okay. Why isn't there some evidence you're saying well The thing you'd like to really address is why you didn't why the district court didn't go into this flap about governor Davis's alleged Per se policy and the Rosencrantz case and so on and so forth. So What is it that you wanted to you say he didn't get a fair hearing but you haven't addressed why there isn't some evidence so you're just saying we should the district court should have determined that this was a bogus hearing a matter if they Said the right kinds of things to satisfy some evidence We should the court should look behind it and say well, this is they're just doing lip service If the district court had found that it was a pro forma hearing that was a lip service Then his due process rights would have been violated The answer is yes So you're saying if we if we if there was no evidence That they were just doing lip service that what they did say would meet the some evidence test I'm not conceding that there is some evidence and the problem that I have intellectually Analyzing it between there are two separate problems with Going straight to the some evidence standard and ignoring everything else that that we raised in the brief One is that the district court didn't have the transcript of the parole hearing so I think you really have to look at the parole hearing transcript not just the Decisional portion that they had to assess the some evidence and that we put in the brief and I don't really have anything to add I think that a number of the standards that the district court found and even others that it found some evidence for Don't really have some evidence when you look at what was actually said during the hearing for example, there was some questions about his sincerity or his Just blanked it out Those I don't have anything like I'm not really addressing because I don't have anything to add to what I put in the brief The other aspect is that I think is problematic is that I don't think the district court can make an accurate some evidence assessment without Calculating into it. What evidence there is that the board was biased when it was discussing the evidence So your suggestion is that based on these? Statements of mr. Biggs pro se on page 20 of this petition that the district court should have engaged in an examination of governor Davis's parole policy basically That issue what effect that might have had on the board, I'm not relying solely on Page 20, but it again shows up and he's answered again shows up in his objection So I think the court had notice of it and just failed to address that issue I'd like to reserve the remainder of my time for you. Thank you Good morning Good morning, may it please the court and deputy attorney general Jessica Blahney and appearing for a Pelley's I'm going to jump ahead a little bit right to the question of whether or not there was some evidence Because counsel is just addressing it and I think it's important for the court to look at the penal code section 3041 B Where it specifically states that the gravity of the conviction offense the time you're granted to appear Of the conviction offense should be considered to determine whether or not public safety requires a more lengthy period of incarceration I think the board did consider that and found that because of the conviction offense a more lengthy term of incarceration was Warranted I believe the district court did the same thing and implicit in that finding There's a showing that there is some evidence to deny parole Which also is showing that there the decision was not based on bias Because there's some evidence to support the decision. It's clear that the decision was not made due to a bias of the board Just help me Understand how this parole process works when they have the first He's had a second hearing I guess as well in the interval, but you know, we're looking at the first hearing I gather Correct. Okay, so when they when he comes up What is it that the the statute commands that there be a parole date unless the board finds The specific languages the panel of boards shall set a release date unless it determines that the gravity of the current convicted offense or Offenses. I understand. Okay, so that's I'm just trying to get so what the Prisoner coming into a parole hearing is looking for is a release date and it may be The number of years in the future, but it's a target date against which he's now Been a judge to merit likely parole can always be revoked for cause I gather correct As it was a McQuillan and actually correct and it's actually two separate decisions one whether or not the inmate suitable for parole Where there's a number of factors that are considered that are laid out in the California Code of Regulations And in the penal code and then the second decision if they are found suitable, what is the appropriate term? All right. So in this case it was suitability Correct and and because of the nature of the offense That decided he wasn't suitable enough to set a release date. There were a number of decisions the nature of defense was the Primary reason there are also mr. Biggs is failure to profit from previous Terms of probation and parole he continued his criminality. There's also issues of whether or not further therapy was Required is that all that that probation that was pre-incarceration for this offense, right? pre-incarceration for this offense, so after 15 years in as a Essentially a model prisoner That's what they were saying that they were going back to the nature of the offense and what he did during that period when he was 17 and 18 that was the primary reason, correct And I mean has the California Supreme Court addressed Governor Davis's policy didn't the Rosencrantz case It did the Rosencrantz case was directly on point and the evidence that mr Biggs submitted with his petition was considered by the court in addition to other evidence and the Supreme Court found that there was not a Blanket parole policy that the board and the governor Did examine each case and consider all the factors that gave them each individual consideration Which is what was required under the California regulations Okay, didn't they also find that there was a liberty liberty interest They actually did not address the federal due process standards They did though hold that there was a right to have some procedures and that some evidence was required. That's correct Right. So the state still arguing in this case that we should say there isn't a liberty interest Federal law we would argue that sand and should apply And that given standing you should look for an atypical and significant hardship and that a life prisoner Who goes to a hearing and doesn't receive a date stays in the same position? He was as before having the date and understand and that would not Require a due process, right? You know, I think McClellan forecloses that McClellan, I think it's actually different because mr. McClellan had a parole date that was rescinded What's the substantive difference between the two? Didn't it read Ascendant is being limited to disciplinary cases. It did your honor. I did and Under green holes. I don't think there is a question that a due process right applies. So should the court apply green holes, I think That would resolve the issue in line with McClellan. All right I'm just turning to the conviction of sense and the board some evidence finding the board found that In the commitment of sense there was a callous disregard for human suffering and also that the Conviction commitment offense was carried out in a dispassionate and calculated manner. I'm here. Mr Biggs plotted the murder with his co-conspirators He agreed to transport the murderer to the scene of the crime, which he did he actually switched out his car So he wouldn't be recognized He then watched as the victim was bludgeoned and stabbed to death And then he met his crime partners after the crime where there is an exchange of money And the whole purpose of the murder was to prevent the murder victim from testifying in a crime and The board properly considered all these factors and weighed them and decided that they presented the some evidence the primary reason to Deny, mr. Biggs parole Unless you have any other questions Judge Gibson Okay, thank you very much I Have a few responses. I think you've addressed properly that and she has conceded that standing doesn't apply given McClellan's holding As far as the last comment she made about the facts. I could only correct that there is no evidence and the board did not find that mr Biggs actually watched the murder. He did aid he didn't stop it He did actually bring the person who committed the murder back to More carefully dispose of the body. So he I mean he fully admitted to those participations. He didn't watch. I'm not hearing I'm sorry. I just wanted to clarify a factual assertion. She just made about mr. Biggs having watched The victim being bludgeoned that did not happen. Mr Biggs was there and and he admitted in the board found that he participated as far as transporting the killer and Even worse in my mind Went took the killer back so that the killer could redispose of the body once they found out he'd just been dumped But he didn't watch the murder if that makes any difference the Attorney General's argument regarding Right If that particular factual assertion makes a difference it's not right you think it does no, but I don't want to leave it dangling there my only other main significant point is I believe I wrote this down that she's arguing that Bias isn't true and you can't prove bias by the board if there exists some evidence to support the decision. That's just logically Doesn't make any sense you can have a biased decision maker that would undermine someone's due process rights and still have some pieces of Evidence that would support it. That doesn't mean the process mean bias judges can always salt the record I mean, I could be an ALJ and somewhere saying I would hate black people and you know and piecemeal decisions so that I can do that His allegation is that the panel was biased What is the Evidence of that the evidence he presented in his petition was that the levy declaration Asserting what mr. Levy's from his experience at the board as a chairman and as a board member the same people the Levy declaration basically says that the governor's policy has had a systemic effect in Causing the commissioners not to follow the steps that are your requirements. So it's a systemic bias. It's that the system is collapsed Anyone that serves on the parole board because the governor has policy Yes, the governor's policy has a suspected in in bias their decision-making This is the governor who announced that the legislature's duty was to follow his Enacted his vision. I think when he first took office I won and 99 I believe the governor was I forgot to write my chronology. I think Pete Wilson was still governor, but the policy has continued I acknowledge because you're smiling at me a little bit that but this is a difficult thing for him to prove But that's not my point at this point. I think it's an issue that needs to be addressed You know, I think we understand what the issue is Thank you, the case that's argued will be submitted Next case is Lopez Urenda versus Ashcroft Good morning, your honor's morning. Mark Vanderhoof. Why don't you let the folks clear out behind us? It's a little cramped here Okay Thank you for morning mark Vanderhoof along with Stephanie Goldsboro from our office. Somebody who's talking to the mic. Sorry On behalf of mr. Lopez Urenda who is in court here today The issue in this case is whether the elimination of suspension of deportation contained in the 96 IRA IRA Enactment can be applied vector actively to petitioner given the unique facts of his particular case petitioner applied for asylum on September the 6th 1996 before IRA and the elimination of suspension and deportation were passed by Congress and you're you're mindful now You're trying to steer us around Vasquez The Vala correct your honor. It's very distinguishable. I'll explain why When petitioner applied for asylum, he relinquished his right to have the government government carry its burden approving his deportability He did so in exchange for the right to apply for asylum And if asylum were denied to have a full deportation hearing subsequently where he would be able to apply for suspension of deportation But three weeks after he did that Congress enacted IRA eliminating deportation proceeding eliminating Suspension of deportation and stripping him of his ability to do so instead When his asylum application was denied one year later He was placed in removal proceedings based on the concessions that he made in his asylum application I was told he was no longer eligible for suspension of deportation Now we believe this is Distinguishable both from Vasquez of Allah and this court's a prior decision in Jimenez and closed. I'd like to explain why unlike Petitioner here who filed his asylum application before Congress enacted IRA Vasquez of Allah filed his application in March 1997 IRA would had already been enacted. The statute was clear It wasn't going to go into effect for another three weeks But it was clear that he was not going to be able to qualify for suspension of deportation when Vasquez of Allah filed that Application he had no expectations. Vasquez of Allah had no expectations whatsoever of being able to apply for suspension of deportation Because of that he didn't make the claims we make here He didn't make the claims that he gave up important procedural and constitutional rights when he filed for suspension Nor did he make the claim that he had to settle expectation That he would be able to file for a suspension of deportation and thus the court didn't address that issue whatsoever Similarly in Jimenez Angeles The court said that all she did was give up her ability to live in the United States Undetected when she reported to the INS and requested the issuance of an ordinary show cause but again, she did that in March 1997 Five months after six months after IRA was enacted fully aware that she would not be eligible To apply for suspension of deportation if INS put her in proceedings after April 1st 1997 there was no obligations there. There wasn't the quid pro quo in either of those cases I want to make sure I understand your argument because Vasquez of Allah Relies and adopts Lospango correct, which is third circuit case, which does talk about quid pro quo and says there wasn't any so How do you is that where you're headed? With the third circuit says Lospango is Lospango gave up no rights when they're filing the petition for asylum and Did not receive any benefits from Having the government didn't receive any benefits from having in file for asylum that in Lospango, although the application was submitted prior to The enactment the petitioner in that case simply did not make the argument to the court didn't present to the third circuit at all the the statute the Regulations and the warning on the asylum application and so the court didn't address This issue at all and and and so that it's not finding precedent on on this court and it's very it's very important The Court made a third circuit made a big point of saying that no rights were were given up But that you're skipping a step before you jump ahead there. You say now the third circuit It wasn't argued in the third circuit so we come back to Vasquez Which says the third circuit noted the uniqueness of st. Sears plea bargain quid pro quo situation and rejected any similar expectations thereby adopting the quid pro quo Rationale of The spongo and you're saying we should look beyond that because it wasn't really argued in the third circuit in in either case Actually, it couldn't have been victim. It couldn't have been argued in in Vasquez de Bala because it wasn't actually the same She asked us all apart only three support we didn't rate This is a very very important Right that the alien gives up and that's why they specifically said in enacting the promulgating regulations in December 1994 They said and this is a our opening brief for page 25 The asylum application is often the only source of information Available to the service to initiate proceedings before the immigration judge and on page 27 similarly in that Preamble to the regulation The department believes that the aliens written admission of alienage and of having no lawful status in the United States is sufficient to satisfy the standard of evidence for establishing Deportability Consequently, the newest album asylum application will contain a warning clear warning the epic that the application may be used to establish Deportability this part of the final rule will not be applied retroactively and will affect only those persons who make an application on the new form and they did that because they said this is such an Important right the person is giving up on the time for asylum They are we are now changing the regulations before they could not use that information under ACF are two forty two point seventeen. They couldn't use that information in December 1994. They changed the regulation We said from here on in anyone applies for asylum is going to give up their very important Right that the government meet its burden of proof improving deportability and because it's so important We're going to put a warning on there telling them that and that warning is contained in the excess of record at seven Which is an application that we submitted did mr. Lopez you entered lose something very important in this bargain when he wasn't alive allowed ultimately to file for a suspension Absolutely the immigration judge in ruling that she felt she was without power to allow him to file for Suspension Said had this respondent been eligible eligible for relief in removal proceedings either through suspension or deportation or cancellation of removal He would have been a good candidate for that relief and appears to be a person who would contribute to this country in a meaningful and positive way So it is with some distress and a great deal of empathy for the respondent That the court feels it must go forward at this point and grant the only relief available Voluntary departure. He is to US citizen children. He's been here for years. He gave up important rights when he filed for his asylum application thinking if denied he could file for suspension of deportation would have been Granted based on what the immigration judge says and that was stripped of in three weeks later. We think under Supreme Court's vision length and in st. Cyr it falls right within that and is distinguishable from Vasquez Zavala Jimenez and who spawned one I'll reserve the rest of my time. Thank you. All right May please support my name is auntie Maya presents the Attorney General Contrary to petitioners claim Vasquez Zavala as well as Jimenez and Lee's do control this case because IRA IRA Governs his proceedings and he has no settled expectation the distinction that he raises are two and both are unavailing the first distinction is that he was Not aware of the existence of IRA IRA at the time that he submitted his asylum application whereas Vasquez was aware of it and submitted his Application just prior to the effective date and there's a distinction there well that's an insignificant distinction when this court said in Vasquez that the basis for its decision in dismissing the petition was Because it was the fact that he had no settled expectation as to Whether his application would be denied and even if it were denied He had no expectation as to when the proceedings would commence. The emphasis is on the timing of the proceedings petitioners suggest that Vasquez actually had an expectation as to the timing of the proceedings and that is completely erroneous Therefore the distinction is insignificant. Now the second distinction that he makes is that You have a set of expectation that he had Initiated some sort of formal exchange Which was comparable to that of Saints here? And that is flawed There was no formal exchange like that of the plea bargain in Saints here and this court has already stated so and Jimenez and Spango there was no Loss of a right and there was no gain by either side Here as far as petitioners concerned. He did not give up any protected rights. He does not have a right to Sustain to make the government to stay in its burden of proof the burden of proof is required In fact in this case the government still had to sustain its burden of proving his alienage And I would point out that The basis for finding him deportable was not any information obtained from his asylum application Rather it was his own admission during the removal proceedings at that time He cannot argue that he was not aware. He was not subject to removal proceedings and the laws existed He knew and he Conceded that he was subject to removal. So there was no right that he gave up He also did not Even if he gave up some sort of right, he did not do so to gain a benefit There was no benefit from him for him to gain. He was placed in proceedings and He had submitted his asylum application in 1996 he entered the u.s. In 1990 March 1st 1990 that means that he would have had to have some sort of expectation that the INS would commence Proceedings no earlier than March 1st 1997 That means they you had some sort of expectation as to when the proceedings would have commenced this court has already stated That the alien has no such expectation So therefore he could not have gained anything in addition to that as the key acknowledges in his letter brief at page 6 and Has stated He would have had to been eligible for the form of relief He's seeking at the time that he submitted his asylum application He wasn't and the government also did not lose anything nor did it gain much of anything That would have been contemplated by things here the government basically Did not induce him to do anything by voluntarily submitting himself and his application for asylum The government did not force him to do anything and they didn't gain it because they still have to establish his alienage and as stated earlier he Gave up that Evidence on his own accord. He voluntarily did so and the government if anything gained a limited benefit and limiting some of its resources or prosecutorial resources But as this court stated and that says that is not the kind of Gain that the government Received that would have been contemplated by things here as a result There really is no distinction between Jimenez and Vasquez and this court is required to dismiss this case Judge Gibson, did you have any questions? A Couple a couple responses in I Would refer the court excuse me to our letter brief on Vasquez at all. I think it's it's clearly distinguishable and I would urge the court to Look at that again. I think this is clearly distinguishable from Vasquez at all because of the fact that Excuse me when he applied He did not know that the law was going to be changing obviously and and the government Said we're going to warn you about this because you are giving up very important rights because of that This is really we believe is controlled by Saints st. Cyr is a pretty much the same situation There be in st. Cyr the individual in pleading guilty Allowed the government not to have to sustain its burden Approved in that case and similarly here. There is a concession of Supportability essentially in the information provided and that's set forth in the regulations and in the warning on the application There was definitely an exchange here and he did give up something very important I would like to clarify though that this is not a situation contrary what the government attorney argues You Might clarify for me what it was that he gave up The government has a burden of proving elements of deportability and including alienage and what the Correct your honor he Well, that's the that's the Essential well the whole the whole fact that he Was from another country was unlawfully in the United States and the warning and the regulation says that but that's an important Thing that the government has to prove and the immigrant in following first are being really any any problem approving alien age There often is your honor. We we cited the Ramon Sepulveda case of this circuit to the court Where alien age was the only issue in that case the government couldn't prove this case About this case what could be a problem in this case? well Yes, your honor because there would have been a problem. He came forward and gave the information to the If the INS had somehow come across him in some other way you mean well That's a different thing as to whether he's discovered That isn't what you're arguing is that he came forward and was therefore discovered you're arguing that he gave up the The problem the problem that the government might have in proving alien age Correct your honor. I thought I did give up as far as You're arguing or could argue well the warning on the Assam applications is very specific about that and and in the preamble to the in the December 1994 regulations, which we cite in our brief the Department of Justice was very specific that the alien was giving up an important right in having the government being In not having to prove alien age and deportability. How's this different from him in us? Humanus because the individual did not file for asylum wasn't forced to give up her right in Forward and she can't opinion says well, that's not that doesn't rise to the level of Saints here Correct, but that's very different because it wasn't a a quid pro quo But here the individual is allowed to file for asylum by regulation is compelled to give up her Right to have the government proved to portability. She knows he knew that if denied asylum he would be placed in deportation proceedings and Would be giving up his right to have the government prove its but make me it's burden of proof Which is a very very important right in a deportation proceeding. The Supreme Court has said it wouldn't in all probability that had not filed for asylum that He Wouldn't have been discovered By the time the ten years which appears to be the case. That's but I'm not sure that's something we can take into account as to the discovery aspect What you can and I know where the courts going just did did he menace antlers cover that issue and we think not and the reason Is he menace antlers didn't involve the the issue of coming forward implying for asylum? And that's a very important difference. He myself has just said I knocked on the door of INS. I said here I am Please put me in proceedings in the next three weeks so I can qualify before the law changes and the INS You know basically didn't do that and the Supreme Court in the ADC has said it You know, there's no ability to force the INS to do it on the timing. We're not raising a timing issue here We're not raising that the government had an obligation to put it in proceedings before April 1st 1997 at all. We're saying when he applied for asylum he had the Expectation that he'd be eligible for suspension of deportation He gave up his right to have the government prove deportability But clear conviction and under critical evidence as it has to under would be and then that was stripped away from three weeks later So we do think this falls within St. Cyr and is not Bound by baskets alone. All right. Thank you very much. The case is argued will be submitted I Judge Gibson are you good to go for? Two more cases. I think I can make it. Okay, we'll just I may ask a question in a little while All right, the next case on calendar is Mendez Gutierrez versus Ashcroft My name is Jonathan Kaufman I present the petitioner This is an immigration case it's a petition review of a deportation order entered against the petitioner by the BIA and the petition requires the court to determine if BIA deprived petitioner of a full and fair hearing on his application for asylum in the United States The fellow whose party now has the presidency of Mexico, correct This is the fellow whose party has the presidency of Mexico. Am I getting the right case? Yes The but that's not really the the issue that the BIA addressed or the immigration judge addressed. He the petitioner applied for asylum affirmatively to the INS and his application was referred to An immigration judge for consideration in a removal proceeding when he appeared at his master calendar hearing he withdrew his asylum application Based on the erroneous belief that he was eligible for other forms of relief from removal When he got to his individual calendar hearing it was determined that in fact he was not eligible for any other form of relief and he sought to Basis that they thought that he had entered in 1960 in 1986 Whereas he really get it entered in 1989. That's correct. And then because of the stop time rule, he was a Ineligible who made that mistake? Is that you? No Represented at the removal hearing. That's a good thing The actually the the attorney who represented him has been disbarred yeah The The immigration judge Would not permit petitioner to reinstate his his application for asylum and didn't state any reason at all for Not permitting him to go ahead and apply for asylum and light of the fact that he wasn't eligible for any other relief from removal at that point That decision was appealed to the BIA and the BIA found that in fact the the judge The BIA was critical of the immigration judge for having failed to articulate any reason BIA found that the petitioner's a desire to reinstate his asylum application given the circumstances was reasonable and the BIA Also refused to let him have a Asylum hearing but for an entirely different reason the BIA said that the written application Failed to state a prima facie case and petitioner failed to show that he was prejudiced by not having a hearing on his asylum application You would like this to be treated what is a motion to reopen no, I think that it's wrong to place this this Petitioner into the position of someone who's asking to reopen a case Well, it's not analogous to a motion to reopen what what the government argues? I think that we don't have jurisdiction and because how what are we supposed to be reviewing but the standard of discretion? the the standard of Discretion is the standard stated by the by the BIA Number one was was it appropriate the BIA to say that we're a an alien is making a reasonable Request to reinstate an asylum application that was erroneously withdrawn that he has to meet the the standards of a motion to reopen that he has to show prima facie eligibility whether or not that is a An abuse of discretion by the BIA in saying that those standards must be met where an alien has not been ordered deported The alien isn't seeking to reopen a case that has already been concluded He's appearing at an individual calendar hearing that's been scheduled Time has been blocked off to consider applications. He wants to make for relief from removal Nothing to be more reasonable than that. And so to say that he has to actually present a prima facie case. I think is a An arbitrary standard that's being applied to an alien that in that situation but even if the court wants to say that the BIA was not abusive and making that standard Then the way that it applied the law to the facts of this case Was was wrong and the court would read would view the BIA's finding that prima facie eligibility was not established De novo because that's a legal finding and the application did in fact state in a very minimal way But did state facts from which it could be proven that he had a well-founded fear of persecution Which the BIA didn't even analyze all the BIA analyzed was whether or not the application stated facts to prove past persecution The So, I just want to make sure now I understand the argument you're saying that this is a unique motion for reinstatement and that it's The reinstatement motion we can determine we have jurisdiction to determine whether it was Arbitrary and capricious on the part of the board to have required or imposed the prima facie Showing standard that's used in removal hearings Position but the APA precludes judicial review of this BIA decision Is very meritorious it is correct that there is no statute that that dictates the standards that an alien needs to be in order to reinstate an application that he erroneously withdrew Based on a reasonable assumption that he was ineligible. I mean you have a lot of different factors because The absence of a statute Dictating the standard is irrelevant because the BIA itself in its decision set up the standard that it was going to follow It set up legal criteria and the alien needed to prove prima facie eligibility And now you need to prove that he was prejudiced as a result of the IJ's possible error the then what are we reviewing it for we Use the discretion of what they decided in terms of whether he made the prima facie showing or whether they erred in imposing the Prima facie requirement in the first place. I would say there's two steps. So how did they set up the standard? That's what I'm trying to understand. He set up the standard because the the Attorney General said that the BIA by regulation Exercises the Attorney General's discretion to do what is necessary and appropriate for this position. Okay. I know I Understand if if you're asking us to review whether they Applied the prima facie rule Okay, but I'm having trouble Understanding Apologize for being slow. But what is the standard by which we judge whether they? Adopted that standard appropriately or not. What do we look to? you would look to the To the regulation which which requires that they exercise discretion and what you would then apply an abuse of discretion standard to their to their decision or Is there a showing required of what a prima facie showing of why he would be eligible for asylum? That's what the that's what the BIA did the BIA said that he had actually show that That the application had a certain level of merit. Yeah, if he hadn't withdrawn Yeah, are you contending that's not the case that that was there? I think that that was error also because by by saying that at the point where the the hearing was ongoing that really the only issue as far as BIA should have been concerned was whether There was good reason for him to have withdrawn the application was there a reason to let him reinstate the application not what is the Merit of the application, but what we're I think we're both having a problem Deciding what it is that The alien has to show in order to get that reinstated That the That he had filed a timely application And that it was withdrawn For that there's a good cause for permitting him to reinstate it. That's it the good cause for reinstate As a part of that good cause isn't there a showing necessary that he has at least a prima facie case for proving asylum Our first argument here on would be that that the BIA Errored in in saying that that had to be Met that there had to be a prima facie showing of eligibility Otherwise, he isn't precious by having withdrawn to see If you don't have a case, that's that's correct. That's that's a second issue That's that arises here. The first issue is whether or not he has to show prima facie But but yes, we would concede that but if in fact he did not know that he did have to show up But what has been? What has he shown? We did show it in fact the prima facie case, well, that's that's what I would like to hear. What is it? Well, his prima facie case was that he said he was a member of political party He says that the that the government's federal police would harass him would question him Would detain him would take him to a desolate place and would threaten him all in an effort to make him terminate his political affiliation So that's a prima facie case for asylum well, and I guess that the the Reliance on the IJ was that Look, that's all being alleged But there's not no past persecution that would indicate that there's going to be anything in the future Well, the IJ didn't articulate any reason for having permitted the Not permit permitting the petition to to reinstate his application. That's what the BIA said was that there was no past persecution But the BIA didn't analyze in any manner the application Under a standard of a well-founded fear. They just said there's no past persecution. Well, but I Isn't that the reason why they were looking to to? pass persecution a minute and past persecution can be a basis alone It has to be a severe persecution and so forth but but the the point of past persecution usually is to show that it's going to continue on in the future and That's a reason for a well-founded fear of persecution in the future and they're saying there was none of that No, but a Well-founded fear can be established even if there is no past persecution past persecution. Yeah makes a presumption. That's right. It helps Yeah, and I and I think that there is It could be argued that that this application doesn't state sufficient facts is to prove past persecution But it could still it could be argued was there anything you said about past persecution Well, there was threats and harassment Thank you Hello again, your honor and to my for the government The Key in this case is that petitioner is attempting to shift responsibility for his own error The case represents his efforts to resurrect Asylum application which he voluntarily withdrew There is a mistake. I'm sorry by mistake. Yes, your honor but it was something that in withdrawing any application it is incumbent on the petitioner to You know what? He's doing it to voluntarily do so based on the circumstance All right. We have somebody who by mistake was through the application what what you contend? Has to be shown in order to reinstate it Your honor at a minute. Well when you read when you withdraw your application you in effect terminate the application just as a Proceeding in which you actually presented evidence and the immigration judge Denied the application. It's effectively the same type of result and as a result in doing so in order to After that proposition, I'm sorry, your honor What authority do you have for that proposition? Your honor if that the withdrawal Is the same as losing trying to case it was your honor I Can't buy the court with any authority off the top of my head. It's more of a reasoned Conclusion because the end result is the same that by withdrawing the application There is no longer an application that exists. There's nothing that the there's no benefit that has gained from the Withdrawal of the application just as there is no benefit gained when the application is denied in any event There is no standard for measuring a request for the denial of a request to be in state And as a result the court doesn't have jurisdiction under five USC 701 As the court has indicated and as Positioners have failed to articulate there really is no basis on which the court can measure whether or not it's appropriate for the Agency to deny the request for reinstatement. I'm sorry. You said the court has indicated It was based on some of the questions at least the line you shouldn't read those Apologize Don't count on this court That petitioner had Was unable to respond to the court's questions Sufficiently to that's your judgment, but that's not necessarily the judgment of the court. Yes, your honor in any event regardless of what? whether the court believes that there is an agency action here that is Committed solely to the discretion of the agency such that the court has no Jurisdiction you're saying that even though you're supposed to exercise discretion. We can't review it for an abuse of discretion Not when there is no standard this court has stated. You can't give us any authority as to why you treat this motion the same as a motion for Reopening That's just a reason conclusion on your part Defer to that. Yes, your honor and there is no standard for it. And as this court has stated and through the cases that were indicated in the Government's brief when there is no law by which we can base the jerk the court's jurisdiction The court has no review under five USC 701 Assuming We don't accept that Arguendo, I have a question About this and assuming that the board could have Within its discretion applied the prima facie case Requirement that it does in removal proceedings This circuit recently got its hand slap for taking upon itself to resolve the question Whether or not change circumstances mooted the issue of Persecution speaking of the INS versus Ventura, we were told that when the Board of Immigration Appeals didn't resolve that question itself That we should not take it upon ourselves to do so even if it appeared in this case, for example that the party to which The claimant the petitioner is a member is now the governing party of Mexico Should we remand this to the BIA then or should we decide that issue ourselves? your honor the circumstances are different and for one the standard of review in The case of Ventura was different because it was a matter of whether or not there was substantial evidence to support it the board's determination Here we're dealing with an abuse of discretion standard if any standard at all has to be applied And in looking to determine whether or not petitioner has presented any kind of evidence any Valid claim the court may take a look and must take a look at the entire record And can consider it to know that as far as whether or not there's a prima facie showing here because in order to assess whether there was a due process violation the court can Look at the records de novo and Because petitioner in effect has raised a due process Violation claim the court must consider the entire record including evidence that may be judicially noticeable in the current circumstances do reflect upon ability of petitioners of violent claim you even if the court were to consider the Application my court would have to determine whether he can establish his burden of proving by specific evidence that he had either been pursued in the past or had a well-founded fear of future persecution as The board had indicated. There was no showing past persecution based on Harassment and empty threats and this court has already stated in various cases Limb and a slew of others what that empty threats and harassment are not sufficient for a claim of past persecution As far as a well-founded fear of persecution Again, he cannot establish that given that the current party that is in control is the party Which he affiliated himself and he at a minimum in making a claim of a due process Violation have to show that there is some sort of prejudice Because he could make a penetration Well, how should this court? I mean we can take judicial notice generally But is this court really in a position if we're down to fear of reasonable fear of future prosecution predict the status? What's going on in Mexico? Vincent Lee Fox is not necessarily as popular now with a PR a PRI comes back into power I mean are those judgments we should be making your honor. It's a consideration that the court can and should make in in a claim of a due process violation, but that's the fact that petitioner is Has not been denied opportunity to be heard by the agency. It's rather it's his own error that Really precluded him from having a hearing the fact of the matter You still have to show prejudice and he cannot establish prejudice If the court takes a look at and applies the de novo standard which it can do so in a due process challenge To look at the record and then find that well has he established a premature case? And that means that the court can consider the usually noticeable facts Especially where his claim is based on His affiliation with a party that is currently in power We wait until the CIA addresses the question of well-founded fear for future persecution All the CIA addressed was past persecution Yes, your honor The question we do it when they haven't and we were remanded from to do it the court May do so to be on the safe side and remanded back to the board However, because this is a due process challenge and the basis for the denial of the request for reinstatement Is that he couldn't establish a due process violation and again? In applying a de novo standard of review the court may consider it's a different standard of review than that of INS Ventura in that Case deference have to be accorded to the board's decision and if the board did not make a determination on an issue Then out of deference to the board's expertise he has in fact made a case for a well-founded fear of persecution just by making it the noble review and we Reverse the PIA and say yeah, he's entitled to stay Your honor. No, that would be far-reaching because the board didn't and the agency never Made a decision on an asylum application because he had withdrawn the asylum application the This court may if it chooses to do so and finds that he did say under due process We can do all this said to know for reviewing and I'm just wondering if that carries that far No, your honor. The de novo review is limited to determining whether he has established a prima facie case of eligibility So what you're saying is we could? Applying de novo review Conclude that there is some reasonable basis to consider a Fear of future prosecution and therefore he has made his prima facie case. He satisfied the prima facie case. So now he's entitled To have the matter reopened to reinstate If I understand correctly if I can restate my understanding of it your honor The if the court Applies a de novo review and looks at the entire record and finds that there is a reasonable possibility that he has an asylum claim then the court could Find that the board should actually allow him to reinstate his asylum application Thank you. And in this case, he has no case. I understand you take that point. I just don't want to Thank you I Think that the issue or the fact that the petitioner Voluntarily withdrew his asylum application is a red herring because the BIA said that he acted reasonably in seeking to reinstate it so It really doesn't matter if you found him. Yes, he voluntarily withdrew it, but the BIA said that Ultimately in wanting to renew it and as far as the court's ability to take judicial notice of changed country conditions The court could take judicial notice that Vicente Fox is now the president of Mexico, but that doesn't really end the inquiry and more importantly At no point in the pleadings and at no point until today Did the government ask the court to take judicial notice so the fact that the court does have the the authority to take judicial notice It must be requested to do that if it is brief. Yeah, it is asked for judicial notice then possibly It could be appropriately done but to come here today and to say that the court does have that Authority is it's correct, but it hasn't the government hasn't properly invoked that authority So, I don't know that the court can in fact take judicial notice under these circumstances. All right. Thank you Judge Gibson any questions? Thank you Case just argued will be submitted. Thank you both The Next case on calendar Sosa vs. Ashcroft has been submitted on the briefs As has the next case on calendar Lopez Rodriguez versus Ashcroft also submitted on the briefs and the final case on calendar is Howard versus Barnhart I Hope they may proceed. Thank you judge They please the court. My name is Mark Colville. I'm here this morning representing Sarah Wolfe in this child's disability case As a preliminary matter if I may I'd like to request permission to reserve two minutes for rebuttal you may reserve Just watch your time. Thank you, Jeff There's two ways this court can handle this case the first one I'll only address briefly because I think it's pretty straightforward That's remand for award of benefit The case I would fight in support of that is the Schneider case for this court said that lay testimony Can be credited in Schneider the court indeed used lay testimony to find that the famous condition equaled the presumptive disability criteria in the listing of impairments This case is a little bit easier than Schneider in two respects one In Schneider that ALJ found that the lay testimony was not credible or at least didn't consider it Here the ALJ specifically found that the aunt's testimony Sherry Howard's testimony was credible He just didn't factor it into his conclusions to the 1996 amendments Don't require a citation to a specific listing when finding equivalence. It's sufficient to find that equivalence is in general to the listing of impairments Now that's the easy part the hard part is if this case of this court decides to remain this case for further proceedings in that case, I believe we are faced with a question of first impression and that is interpretation of the statute that requires the Commissioner to make reasonable efforts the pediatrician or other appropriate specialists evaluate the individual's case Here the ALJ was specifically asked to call a medical expert to testify at the hearing He specifically declined to do so so we know that the ALJ Made no effort to call a medical expert to evaluate the case of the individual instead the ALJ based his decision and I'm quoting directly my Review of the medical evidence the ALJ made a Review of the medical evidence in his decision Then reached a conclusion that the claimant did not equal the listing but he never married those two things together Why does a review of the medical evidence fail to show that the claimant equal the criteria of the listing? That's exactly the practice that this court discouraged in the Regenleiter case where it said simply listing objective factors Even if done seriatim, it's not enough to fulfill the ALJ's obligations The district court, although I realize the district court's decision isn't what's being reviewed here But the district court made what I consider to be a mistake. The district court said well The child had a lot of evaluations. A lot of people have seen this child And that pretty much was what the ALJ said too My response to that is the plain language of the statute doesn't say the commissioner shall make a reasonable effort to Have the child examined because there are already provisions for that in terms of consultative examinations the commissioner said the This statute says that the commissioner must make a reasonable effort to have the case evaluated. I think a reasonable Reading of that statute is the entire case the entire case includes the additional evidence submitted before the ALJ Which in this case was very important because it bears on a long-term care assessment that found the child was at risk of institutionalization the addition the the case involved the Testimony, and I think that was very important Even the ALJ said she was credible and she identified a number of deficits that I think a medical expert would have looked at It's also not enough that the non-examining state agency physicians reviewed this child's case at the initial and the reconsideration stages again That was already provided for at the time The statute was enacted if that wasn't enough then the statute would have no meaning and I think it's the principle of statutory construction that it should not be Interpreted in such a fashion There's no legislative history on this is there I tried mightily to find anything at all and I couldn't find a thing Not a thing because in this child this is a cutback on the statute with a cutback as I recall on the Benefits of available, isn't that correct overall overall? But this stat, but this does introduce the notion that there'd be a qualified pediatrician or other or other qualified But I take up the argument is in case of child disabilities Congress Appears to have been focused on getting someone who's familiar with child Diseases and development so the other X other individual is it enough if they are just someone who's Experienced in dealing with Rheumatoid arthritis or whatever. It may be doesn't necessarily have to be a pediatrician or does does the Do the people who testify? Evaluating the case have to be specifically qualified in childhood diseases that would certainly be my argument for example There's some mental aspects to this case that the ALJ just called a psychologist somebody with PhD after the name I'd say wait a minute. Let's find out what kind of psychologist and if that psychologist isn't a child psychologist or at least can't say Well, I've got experience in dealing with children. I would object. I would say the statute says appropriate Specialists and that's not an appropriate specialist Does that answer your question? Yes, thank you There are a couple other things that I'm only going to touch on briefly because they're not The overall focus of the case, but the other problem with this case is the ALJ's Selective analysis of the evidence most specifically his failure to look at the Arizona long-term care evaluation It said this child was so impaired that she was at risk of institutionalization Also contrary to the ALJ's version of the facts found that the child needed occupational speech and physical therapy The other problem again, just touching on it briefly is that the ALJ was very unclear as to how he was reviewing this As you just mentioned judge Fisher there was a there was a statutory change here If the ALJ not once not twice, but three times says he's reviewing this case as a continuing disability review for medical improvement That has nothing to do with the statutory changes that you mentioned Um At that point then unless there are further questions from the court, I will reserve the rest of my time Judge Gibson Judge Gibson any questions? Okay. Thank you And to the court my name is William Dawson hearing on behalf of the Commissioner of Social Security Appellants argument that the Commissioner did not comply with the statute 42 USC section 1382 CA 3 I Okay is completely without merit Here Appellant case was evaluated by two state agency physicians. Is the case the case was evaluated or the Physicians basically take a look at the available medical evidence and Determine whether or not the child meets equals or functionally equals the listings and this notably in this case. Dr Kirshner Vic is a pediatrician as indicated by the AMA AMA Medical Association American Medical Association's website that's in the record. That's not in the record Is that enough? I mean the ALJ didn't evaluate them as a Expert to evaluate the case per se doing the ALJ did not know the ALJ did not I'm just saying because there's these two folks two doctors in the record. That's enough to meet the statute That's enough to meet the statute alone in addition to that the ALJ did send the child out to have a Consultative psychological evaluation on two occasions and this was done by. Dr. Leonard on August 1997 At and this is at excerpts of record 16 through 21 and she also evaluated him on April 1998 excerpts of record 27 to 31 Notably, dr. Leonard is a specialist in child psychology and This is indicated on her letterhead excerpts of record 27 I believe It Says Elizabeth L Leonard director of clinical and neurobehavioral disorders child and adult psychology Finally the commission was not obligated to consult other appropriate specialists as the district court found developments evaluated by numerous medical and non-medical specialists She was evaluated and by at least 11 separate specialists Developmental psychologist a child psychologist and neuropsychological fellow fellow school psychologist occupational therapist This is an issue that's troublesome to me because I do Note that this statute cut back on benefits to children But did take the trouble to specify that it'd be a qualified pediatrician or other individual like knowledge To evaluate the case and what I'm concerned about Although in this case there seem to be have been a lot of doctors Looking at this unfortunate young girl That somehow the notion that the ALJ's can satisfy the statute By saying well, you know, they're examining or consulting doctors here who fit the category of having Pediatric type experience so that's enough to satisfy the mandate of the statute I don't find that an appealing reading of the statute doesn't seem consistent with what Congress had in mind But they wanted an expert who would assist the ALJ whose may not be familiar with the Peculiarities of childhood diseases and the difficulties instead of Then I just finished because I'm really interested in getting your your complete thoughts on this That if The ALJ's are going to start relying on the just the witnesses who are brought forward That is does not seem to be what the statute contemplates that contemplates that the ALJ make an effort to get that expertise to help him or her evaluate the case and That's why I'm concerned even in the given the number of people you're listing here Did those people really evaluate the case or did they come in as we so often see we had a case yesterday? where the Surgeon looked at the woman's chronic sinus condition, but he was just looking at a narrow issue Yes, he was an expert in sinusitis or whatever But he wasn't there to evaluate the full picture and you all were arguing your administration was arguing Well, you know, there's not enough evidence to support there. So how do we how do we assure that the ALJ's? actually treat this congressional mandate seriously Usually you're right you're correct When the ALJ does send the claimant out for an evaluation it is usually just a snapshot at that point in time on some occasions the evaluators are able to So sometimes they they might evaluate the case the way the commissioner usually has Doctors evaluate the case that at the initial reconsideration Levels of review and in this case the statute is worded in a way that It's not necessarily the ALJ has to have a medical specialist evaluate the case It says the commissioners shall make reasonable efforts and it seems That the intent of the statute is to make sure that there is at least a doctor To you know evaluate the case because sometimes the claimant may come forward and not have any medical evidence they might just have you know, just a couple reports from occupational therapists speech therapists or You know lay witness reports This is the way ensure that you have at least have a physician an appropriate specialist Evaluate the case and that's what happened in this case The claimant was if the case was evaluated by two to state agency physicians And they came in at what stage they came in at the initial and reconsideration levels of review in this case it's it's a redetermination case to determine the case over again and It was Dr. Kirsch Kirsch pick evaluated the case in September 1997 and Kirschner evaluate the case about a year later in May 1998 Dr. Kirschman Kirschman especially Is not indicated in the record But I did some research on the American Medical Association's website which indicates he is a pediatrician in this You can take you can take it upon judicial notice them if you'd like I could make a motion for that judicial notice of somebody's Authority somebody's credentials Start getting those on Doebert motions and we're in big trouble Okay, sign up our appellant also argued that That the standard or the the standard in this case wasn't necessarily clear but the LJ Indicated that he did redetermine appellants case under public law 104 dash 193 He did mention the continuing disability review procedures in this decision But he also specifically stated that the case was being redetermined under public law 104 At exception record 75 73 and also 84 and his final findings. He also indicated that He redetermined the case under public law 104 dash 193 now that may be true, but As we heard in a different context today a judicial officer can make statements that push the right buttons, but Substantively to do something quite different and the concern one has when the LJ repeatedly cites the wrong Process he may invoke the statute, but how do we know? He wasn't really applying a different standard even though he invoked the right statutory Well, he did he did in this case is the substance of the decision in the case that it was a redetermined nation decision He looked at all the evidence Since she was found disabled indicated that The evidence did indicate some improvement in this decision in this case because of return determination He didn't have to find that there's in an Improvement in in her condition because under the new statute he was more stringent It was more stringent to become disabled He just went through the new functional domains indicated that there was yes Didn't meet equal or functionally equal the listings All right Good Gibson, do you have any further questions? Okay Judge there are a few points. I want to make I'm really not happy about hearing about extra evidence evidence Extra record evidence at the time of oral argument, especially when it wasn't in the brief, but I don't think that's important What's important is the administrative logic in this case? Did not even mention The state agency physicians in his opinion. They didn't even exist as far as that opinion was concerned If the commissioner is saying that that satisfies the statutes Requirement not only is that legally incorrect in terms of what I believe would be the reasonable intent of Congress It's certainly factually incorrect under the facts of this case But Let's look at what the commissioner just said the state agency physicians reviewed the available medical evidence Everything in this case was not available to those positions in particular. The commissioner relies upon Dr. Leonard's second evaluation at excerpts of record 30 Dr. Johnson says This child should be sent out for a neurological evaluation excerpts of record 38 through 39 We have that neurological evaluation that dr. Leonard never saw a physician who had testified at the hearing Would have had both of those items of evidence available to him or her to evaluate the case and that I think is very important The only other point I want to make is about this this standard of review By the ALJ rather and that is that it's hard for me to understand how the commissioner can say well This business about medical improvement wasn't important because he also cited the statute when the ALJ himself in his decision Mentions that improvement is part of the reason for why he's making the decision that he's making Under this court's case in Holohan and the 8th Circus case in good that would not necessarily carry the day in and of itself But the point is it certainly is a matter of concern regarding what the ALJ as you mentioned rich Fisher had in his mind Are there any other questions for the panel? Just I would be interested in your Take on the the stature vision that says that the commissioner Shall make reasonable efforts to ensure that a qualified pediatrician or other individual Who specializes in the field of medicine appropriate for the disability of the individual? Evaluates the case of this individual. Does that mean that there has to be one person testifying at the hearing? it sums it all up or Can it be the evaluation other individual who specializes in the field is evaluating what those Disabilities are As a practical matter, I mean, I'm in the trenches I'm a practitioner doing this ALJs call medical experts to come into the hearing. I mean, that's just how it's done. I've never seen it done in any other way Some ALJs call medical expert every single case which I I approve of Could there be a different way of doing it? The answer is yes And ALJ could could bundle up the whole record and send it off to an expert and say, you know Here's a list of interrogatories and send me a copy of them and allow me to respond and you know We could go down that road as a practical matter I think that's more difficult than having a an expert actually come into the hearing where you can cross-examine them and get it all done at once But this case illustrates an important point though The ALJ found that Sherry Howard the aunt was credible and she listed a whole bunch of things that I think As I already said justify reversal and remand for award of benefits under Schneider But having said that if you just bundled up the documents themselves and sent them to a medical expert and say here they are read them And give me your opinion that still wouldn't substitute For what? I believe is the more helpful route of being there and listening to the witness testifying and and it's so often actually happens in these cases Medical experts saying to the judge. Do you mind if I ask a question? So you're suggesting that this medical expert would sit through the entire proceedings That is how it's done in practice and in Phoenix where I practice and I think that's the better way for it to happen But to answer judge Hudson's question directly does the statute actually require that? No, I don't think so. I would just Just master a judge who reviewed all this and made a extremely thorough Evaluation of all the various people have probably more so than the administrative logistic thank you, and I've just Curious of whether that would be enough to comply with the statute. The answer to that is absolutely no Even though the first of all magistrate judge this guy did a very good job. I agree with you Doesn't substitute for what the ALJ did. It's the ALJ who has to make the decision but two It's not enough to say here are all of the evaluations as a judge Whether it be an ALJ or a magistrate judge or any other judge and then turn around and say well here's my Medical judgment as to whether this child meets or equals the medical criteria in the listing of impairments And I have this rather horrendous footnote in my brief about ALJs acting as their own expert witnesses And that certainly would be my point in response Okay, all right judge Gibson any further questions No questions. All right, the case just argued will be submitted by counsel for their arguments and we will stand adjourned second As a judge whether it be an ALJ or a magistrate judge or any other judge And then turn around and say well, here's my medical judgment as to whether this child meets or equals the medical criteria in the listing of impairments and I have this Rather horrendous footnote in my brief about ALJs acting as their own expert witnesses and that certainly would be my point in response Okay, all right judge Gibson any further questions All right, the cases argued will be submitted by counsel for their arguments and we will stand adjourned
judges: Hall, O'scannlain, McKeown